**VOICESTREAM MINNEAPOLIS, INC., d/b/a T–Mobile, a Delaware corporation, Respondent,**

v.

**RPC PROPERTIES, INC., Appellant.**

No. A06–394.

Supreme Court of Minnesota.

Jan. 10, 2008.

Lawrence H. Crosby, Jay D. Olson, Crosby & Associates, St. Paul, MN, for Appellant.

Tamara O'Neill Moreland, Larkin, Hoffman, Daly & Lindgren, Ltd., Bloomington, MN, for Respondent.

## OPINION

MEYER, Justice.

Appellant RPC Properties, Inc. (RPC) brought a motion seeking enforcement of a settlement agreement with VoiceStream Minneapolis, Inc., d/b/a T–Mobile (T–Mobile). Although the district court granted RPC's request for enforcement and for attorney fees related to the motion, it remained silent as to RPC's request for damages allegedly arising out of T–Mobile's delay in performing under the settlement agreement. RPC appealed, asking for an explicit ruling on damages, and the court of appeals concluded that silence was equivalent to a denial of the request. *VoiceStream Minneapolis, Inc. v. RPC Props., Inc.*, 2007 WL 509621, at *2 (Minn.App. Feb.20, 2007). We reverse and remand to the district court.

In November 2000, appellant RPC and respondent T–Mobile contracted to allow T–Mobile to place its transmission equipment on the roof of a building owned by RPC. In 2004 RPC demanded that T–Mobile remove its equipment, and in response T–Mobile filed a complaint in which it claimed that RPC had breached the parties' lease contract. T–Mobile asked for a declaratory judgment determining the parties' rights and interests under the contract and requested injunctive relief to prevent RPC from terminating the lease or removing T–Mobile's equipment. In October 2004, the district court granted T–Mobile's motion for a temporary injunction prohibiting RPC from evicting T–Mobile and removing its property.

In April 2005, the parties entered into a settlement agreement that required T–Mobile to pay RPC a sum of money, to remove and relocate its equipment on RPC's roof, to coordinate with RPC for selection of a roofing contractor to supervise this work, and to pay the costs related to the supervision. After the performance and repairs required under the agreement, the parties were "to enter into a Release that will release T–Mobile of any claim for damage to the entire roof of the Building up to and including the date of the Release." The parties were to execute a "Stipulation of Dismissal with Prejudice" at the same time. The agreement did not specify a date for completion of performance.

As of early September 2005, T–Mobile had not yet performed this work, and RPC brought a motion to enforce the settlement agreement. RPC requested three forms of relief: (1) an order that T–Mobile remove and relocate its equipment within five days; (2) "monetary damages, to be established in a subsequent evidentiary hearing," for the breach of the settlement agreement; and (3) other relief including attorney fees and costs.

A hearing on the motion was held on September 22, 2005. By that time, T–

Mobile had almost completed the work. RPC noted this and asked "for a hearing where we can have witnesses and documentary testimony on account of the damages that RPC has suffered when T–Mobile simply didn't move." The district court said: "So what you're really asking for at this point is an opportunity to present to the Court any damages that may have been incurred as a result of the delay?"

In its September 29, 2005, order, the district court found that the parties intended that performance be completed within a reasonable time and that a five-month delay in performance under the settlement agreement was not reasonable. The motion to enforce the settlement was granted, as was the request for attorney fees and costs of bringing the motion. The order did not mention the request for damages. The court asked RPC to submit an affidavit setting forth the attorney fees and costs for the motion. RPC submitted affidavits relating to attorney fees and costs as well as to damages, to which T–Mobile objected by letter to the district court. RPC submitted another affidavit asking the court to decide whether a hearing to determine damages would be held. T–Mobile objected by affidavit. RPC renewed by affidavit its request that the court "clarify its position as to whether [RPC] has the right to present evidence as to the damages caused by the delay on the part of T–Mobile." T–Mobile again objected by affidavit.

On December 14, 2005, the district court issued an order awarding RPC attorney fees and costs in the amount of $2,550 "for work regarding breach of settlement agreement in this case," but again did not address damages. On appeal by RPC, the court of appeals determined that failure to rule on the request for damages was equivalent to a denial of the request. *VoiceStream*, 2007 WL 509621, at *2.

■ We are asked to decide whether a district court must explicitly grant or deny a claim for damages arising out of a breach of settlement agreement. T–Mobile argues that the record clearly shows the district court considered RPC's request and implicitly denied it by not granting it. RPC concedes that the Minnesota Rules of Civil Procedure do not specifically address the issue in this case, but contends that it is a fair request to ask a court to make a decision regarding the requested relief. This case thus presents a purely legal question, which we review de novo. *See Modrow v. JP Foodservice, Inc.*, 656 N.W.2d 389, 393 (Minn.2003).

RPC proceeded by motion in the original lawsuit to enforce the settlement agreement and did not elect to file a separate action for breach of contract. A district court is not required to make written or recorded oral findings of fact and conclusions of law in decisions on motions. Minn. R. Civ. P. 52.01. This does not, however, address the issue of whether silence can itself be a decision. The court of appeals relied on our precedent in *Hughes v. Sinclair Mktg., Inc.*, 389 N.W.2d 194 (Minn.1986), in concluding that the district court by its silence denied RPC's request. *VoiceStream*, 2007 WL 509621, at *2. In *Hughes*, the district court granted a motion requesting attorney fees, but said nothing about the accompanying request for a multiplier of 1.5. 389 N.W.2d at 200. We concluded, based on the wording of the petition and the order, that the district court had considered and denied the request. *Id.* In *Johnson v. Johnson*, we held that although the better practice was to prepare written findings of fact, they were not "technically required" when a district court decided pursuant to motions not to modify child support. 304 Minn. 583, 584,

232 N.W.2d 204, 205–06 (1975). In *Sanvik v. Maher*, we held that when the affirmative defense of laches had been pleaded, the absence of a finding of laches in the trial court's findings of fact, conclusions of law, and order for judgment was equivalent to a finding that laches did not exist. 280 Minn. 113, 115, 158 N.W.2d 206, 208 (1968).[1]

Herr and Haydock have indicated that decisions on motions "which amount to a decision on the merits" do not require findings of fact and conclusions of law unless they also resolve factual issues. 2 David F. Herr & Roger S. Haydock, *Minnesota Practice—Civil Rules Ann.* § 52.4 (4th ed.2004). Discussing the fact that Rule 52(a) specifically does not require findings of fact and conclusions of law when decisions are made on motions, Wright and Miller have said that "regardless of what the rule in terms requires, whenever decision of a matter requires the court to resolve conflicting versions of the facts, findings are desirable and ought to be made." 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2575 (2d ed.1995). They cite, among others, to an Eighth Circuit case, *Ackra Direct Marketing Corp. v. Fingerhut Corp.*, in which the court indicated that it could "remand when the lack of findings by the district court would substantially hinder our review." 86 F.3d 852, 857 (8th

Cir.1996); *see* 9A Wright & Miller, *supra*, § 2575 n. 15 (Supp.2007).[2]

As we said in *Johnson*, the better practice is for the district court explicitly to rule on a motion, perhaps even more so when, as here, the moving party has repeatedly requested an evidentiary hearing and a factual determination by the court. We believe it is important to consider the nature of the motion in this case—is there something in the nature of a motion to enforce a settlement agreement and the procedural posture of this case that should inform the rule of law we adopt?

■■■ The motion in this case sought to enforce a settlement agreement. Settlement of claims is encouraged as a matter of public policy. *E.g., Minneapolis Star & Tribune Co. v. Schumacher*, 392 N.W.2d 197, 205 (Minn.1986). An agreement entered into as compromise and settlement of a dispute is contractual in nature. *Mr. Steak, Inc. v. Sandquist Steaks, Inc.*, 309 Minn. 408, 410, 245 N.W.2d 837, 838 (1976); *Jallen v. Agre*, 264 Minn. 369, 373, 119 N.W.2d 739, 743 (1963). As such, a settlement agreement "can be enforced by an ordinary action for breach of contract." *Mr. Steak*, 309 Minn. at 410, 245 N.W.2d at 838. Generally speaking, settlement agreements can also be enforced by motion in the original lawsuit. *Ryan v. Ryan*, 292 Minn. 52, 52–53, 193 N.W.2d 295, 296–97 (1971); *see Eliseuson v. Frayseth*, 290

---

1. *Sanvik* cites to *Alsdorf v. Svoboda*, 239 Minn. 1, 57 N.W.2d 824 (1953), as does T–Mobile in its brief. *Sanvik*, 280 Minn. at 115, 158 N.W.2d at 208. *Alsdorf* is distinguishable because in that case there were findings, although they were not as detailed as the defendants would have liked. *See Alsdorf*, 239 Minn. at 10, 57 N.W.2d at 830. The district court also denied a motion for amended findings. *Id.* at 11, 57 N.W.2d at 830. We said that "[w]here the court denies a motion for amended findings of fact, that is equivalent to making findings negativing the facts asked to be found." *Id.*, 57 N.W.2d at 830.

2. Wright & Miller also cite to *Holly D. v. Cal. Inst. of Tech.*, 339 F.3d 1158 (9th Cir.2003). 9A Wright & Miller, *supra*, § 2575 n. 2 (Supp. 2007). In that case, regarding a motion for summary judgment, the court said that Rule 52(a) "does not relieve a court of the burden of stating its reasons somewhere in the record when its 'underlying holdings would otherwise be ambiguous or inascertainable.' " *Holly D.*, 339 F.3d at 1180 (quoting *Couveau v. Am. Airlines*, 218 F.3d 1078, 1081 n. 3 (9th Cir.2000)).

Minn. 282, 288, 187 N.W.2d 685, 688 (1971) (concluding that the trial court has discretion to vacate a settlement through independent action or motion).

■ As a general rule, the enforcement of a settlement agreement requires a hearing if the issues are sharply conflicting and there are questions of fact for the fact finder to decide. 15A C.J.S. *Compromise and Settlement* §§ 70, 74 (2002). "Trial courts have[ ] 'the inherent power to summarily enforce a settlement agreement as a matter of law when the terms of the agreement are clear and unambiguous.'" *Lewis v. Benjamin Moore & Co.,* 574 N.W.2d 887, 888 (S.D.1998) (emphasis omitted) (quoting *Gatz v. Sw. Bank of Omaha,* 836 F.2d 1089, 1095 (8th Cir. 1988)). If material facts are disputed, an evidentiary hearing is required. *Id.*

If, instead of proceeding by motion in the original lawsuit, RPC had brought a separate action for breach of the settlement agreement, either party could have moved for summary judgment. If summary judgment had been granted for either party, the district court would not have been required to make findings of fact or conclusions of law, Minn. R. Civ. P. 52.01, but the entry of judgment would at least have been an explicit ruling on RPC's request. If the case had not been fully disposed of by a grant of summary judgment, the district court would have had to "ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted" and then "make an order specifying the facts that appear without substantial controversy." Minn. R. Civ. P. 56.04. Again, this would have resulted in an explicit ruling such as RPC requests. If summary judgment had been denied to either party, the case would have gone to trial, and RPC would have had the opportunity to present its evidence. Under any

scenario, the district court could not have, by its silence, granted summary judgment to either party in the breach of contract action.

■ Another way to enforce a settlement agreement is to move for permission to amend the pleadings based on a breach of the settlement agreement. *See* Minn. R. Civ. P. 15.01. Leave to amend should be freely granted unless it results in prejudice to the other party. *Fabio v. Bellomo,* 504 N.W.2d 758, 761 (Minn.1993). The district court has wide discretion in the matter, and its actions will be reversed only for a clear abuse of discretion. *Id.* The court may deny the motion when the additional claim could not survive summary judgment. *See M.H. v. Caritas Family Servs.,* 488 N.W.2d 282, 290 (Minn. 1992) (upholding denial of motion to amend when no facts supported new claim). The court of appeals has required a district court to rule on a motion to amend. *TCF Bank & Sav., F.A. v. Marshall Truss Sys., Inc.,* 466 N.W.2d 49, 54 (Minn.App.1991), *rev. denied* (Minn. Feb. 19, 1991), *overruled on other grounds by Lloyd F. Smith Co. v. Den–Tal–Ez, Inc.,* 491 N.W.2d 11, 17 (Minn.1992); *see Gilbride v. Trunnelle,* 620 N.W.2d 244, 249 (Iowa 2000) (applying a summary judgment standard when ruling on an amendment to the pleadings to assert settlement as an additional claim in the original lawsuit). In this case, RPC could have sought an explicit ruling on a motion for permission to amend the pleadings. If the new claim could withstand summary judgment, a district court would have permitted the amended pleading. A denial would have been explicit and reviewable for an abuse of discretion.

In sum, if RPC had either moved for permission to amend the pleadings or brought a separate breach of contract action, the district court could not have, by silence, denied RPC's claim for damages

caused by the breach of contract. The question in the case is thus brought into focus: should RPC's procedural rights be different because it proceeded by motion to enforce the settlement agreement rather than by the alternatives of amending the pleadings or bringing a separate breach of contract action?

We believe fairness requires the court to explicitly rule under the facts of this case. In light of the important public policy of encouraging (and enforcing) settlement of claims, we hold that a district court shall treat a motion to enforce a settlement agreement as it would a motion for summary judgment, and explicitly grant or deny each claim. The district court in this case must either grant a hearing on consequential damages or explicitly deny the claim for damages and indicate that no material facts are in controversy. We leave it to the district court to determine whether T–Mobile's unreasonable delay in performance under the settlement agreement caused any damages.

Reversed and remanded to the district court for further proceedings consistent with this opinion.

PAGE, J., took no part in the consideration or decision of this case.