*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0830**

Renee C. Kinzer,
Appellant,

vs.

CitiMortgage, Inc.,
Respondent,

Federal Home Loan Mortgage Corporation,
Respondent,

David Kinzer,
Defendant,

Parmount Title, LLC,
Defendant,

Kelly Potratz,
Respondent.

**Filed January 20, 2015
Affirmed
Smith, Judge**

Hennepin County District Court
File No. 27-CV-12-11836

Renee C. Kinzer, Minneapolis, Minnesota (pro se appellant)

Wyatt S. Partridge, Foley & Mansfield, PLLP, Minneapolis, Minnesota; and

Katherine M. Melander, Jeffrey A. Scott, Brian Varland, Heley, Duncan & Melander, PLLP, Minneapolis, Minnesota; (for respondents CitiMrotgage, Inc. and Federal Home Loan Mortgage Corporation)

Klay C. Ahrens, Brian R. Christiansen, Hellmuth & Johnson, PLLC, Edina, Minnesota (for respondent Kelly Potratz)

Considered and decided by Schellhas, Presiding Judge; Ross, Judge; and Smith, Judge.

## UNPUBLISHED OPINION

**SMITH**, Judge

We affirm the district court's dismissal of appellant's complaint because appellant has not pleaded any facts that would constitute constitutional violations or violations of mediation rules.

## FACTS

In May 2012, appellant Renee Kinzer initiated a civil action against respondents CitiMortgage, Inc., Federal Home Loan Mortgage Corporation (FHLMC), David Kinzer, and unnamed codefendants as required by the district court's grant of her petition for a temporary restraining order against an eviction action filed by FHLMC. She alleged that she and her then-husband, David, purchased a home in Minneapolis in 1981, that the Kinzers had divorced in 2004, and that she had remained in the home since the divorce. She asserted that, shortly after the divorce, her former husband used a forged power of attorney to obtain a mortgage from CitiMortgage on the property without Kinzer's knowledge. She stated that her former husband made no payments on the mortgage and that the property was sold at a sheriff's sale in June 2011. She alleged that she informed CitiMortgage that the mortgage document was fraudulent, but received no response.

In September 2011, CitiMortgage petitioned the district court to order the registrar of titles to issue a certificate of title in favor of CitiMortgage. Kinzer opposed the petition and asked the district court to adjudicate the mortgage as fraudulent and to declare her the sole owner of the property. CitiMortgage executed a quitclaim deed to FHLMC in January 2012. Two months later, FHLMC commenced an eviction action. Kinzer petitioned the district court for a temporary restraining order, and it granted her petition, conditioned on her initiation of a civil action. In her complaint, Kinzer asked the district court to declare the power of attorney, the mortgage, the sheriff's sale, and the mortgage to be void and to declare her the sole owner of the property. Kinzer filed an amended complaint in August 2013, identifying Paramount Title, LLC, and Kelly Potratz (a notary public) as the previously unnamed codefendants.

The parties participated in a mediation proceeding on September 13, 2013. After mediation, Kinzer, her attorney, attorneys for CitiMortgage and FHLMC, Potratz, and Potratz's attorney signed a mediation agreement. The two-page settlement agreement was mostly handwritten, with some words and sections crossed out, and it used numerous abbreviations that are not defined in the document. The typewritten portion of the settlement agreement warned: "This is a binding and enforceable agreement and contract." As transcribed by the district court (and not contested by any of the parties), the agreement required CitiMortgage and FHLMC to pay Kinzer $18,000 and for Kinzer to vacate the property by April 30, 2014 and to dismiss her claims against CitiMortgage, FHLMC, and Potratz. The mediator advised the district court that the matter had been resolved.

Kinzer's attorney withdrew on October 21, 2013, and on the following day, Kinzer moved the district court to return the matter to mediation, arguing that the mediation agreement was not complete and that her signature on the agreement "was coerced and obtained by duress." CitiMortgage, FHLMC, and Poratz moved the district court to enforce the settlement agreement.

The district court convened a hearing on the motions on November 7, 2013. Kinzer argued that she had been coerced into signing the agreement by her attorney and that her attorney had misadvised her. When questioned by the district court, Kinzer confirmed that no physical force had been used to coerce her. She alleged that she had been unduly influenced by her attorney.

Kinzer also alleged that the agreement as signed was incomplete because CitiMortgage, FHLMC, and Potratz had added 10 to 12 pages of additional terms. The district court asked whether the added material was "standard boiler plate that we put into agreements when we take the step from documenting it after getting it from a set of handwritten . . . deal points," and counsel for CitiMortgage and FHLMC confirmed that it was.

The district court granted the motions to enforce the settlement agreement and denied Kinzer's motion to return the matter to mediation. It found that she had not shown that she was impermissibly coerced. It also ruled that, although Kinzer might have a claim against her attorney if he misadvised her, her allegations against her attorney did not create a basis to invalidate the settlement agreement.

4

Kinzer attempted to move the district court "for request for a trial or to amend findings and judgment rule 59.14," but the district court refused to hear the motion because Kinzer had failed to schedule a hearing date and because appeal was an available remedy.

**D E C I S I O N**

**I.**

"Settlement of claims is encouraged as a matter of public policy." *Voicestream Minneapolis, Inc. v. RPC Props., Inc.*, 743 N.W.2d 267, 271 (Minn. 2008). The decision whether to invalidate a settlement agreement "rests largely within the discretion of the [district] court, and the [district] court's action in that regard will not be reversed unless it be shown that the [district] court acted in such an arbitrary manner as to frustrate justice." *Myers v. Fecker Co.*, 312 Minn. 469, 474, 252 N.W.2d 595, 599 (1977). The party seeking to invalidate a settlement agreement bears the burden of proof to demonstrate its invalidity. *Johnson v. St. Paul Ins. Co.*, 305 N.W.2d 571, 573 (Minn. 1981).

Mediated settlement agreements are contracts and are binding on the parties when they contain statutorily required notifications informing the parties that the agreement is binding, that the mediator has no duty to protect their rights, that signing the agreement may affect their rights, and that they should consult with an attorney before signing if they are uncertain about their rights. Minn. Stat. § 572.35, subd. 1 (2014). Kinzer does not dispute that the settlement agreement meets these requirements. Rather, she contends that several other bases exist to invalidate the settlement agreement.

Kinzer first argues that the settlement agreement is invalid because the signatures by the attorneys for CitiMortgage and FHLMC do not constitute an offer or acceptance by CitiMortgage and FHLMC. But Kinzer did not raise this argument in the district court, and it is therefore waived. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988). Also, it is well-established that attorneys may sign agreements on behalf of their clients. *See* Minn. Stat. § 481.08 (2014). Although attorneys must have express authorization from their clients before settling a claim on their client's behalf, *Triple B & G, Inc. v. City of Fairmont*, 494 N.W.2d 49, 52 (Minn. App. 1992), Kinzer offers no evidence that the attorneys for CitiMortgage or FHLMC lacked that authorization.

Kinzer next argues that the addition of 12 pages of additional text constitutes an unaccepted counteroffer, rendering the settlement agreement void. To be binding, a settlement agreement "requires offer and acceptance so as to constitute a meeting of minds on the *essential terms* of the agreement." *Ryan v. Ryan*, 292 Minn. 52, 55, 193 N.W.2d 295, 297 (1971) (emphasis added). After confirming with respondents' counsel, the district court concluded that the 12 pages of additional material was "boiler plate" that merely codified the agreement rather than altering it. Kinzer conceded to the district court that she was able to read and understand the essential terms of the handwritten settlement agreement. The typewritten portion of the agreement also clearly identifies it as a binding settlement agreement, in accordance with the statutory requirements. Kinzer does not identify any provision of the added text that alters these essential terms. Thus, her argument that the added material creates a counteroffer invalidating the original agreement as written is baseless. *Cf. Sylvester v. State*, 298 Minn. 142, 157, 214 N.W.2d

6

658, 667 (1973) ("A change in the terms of the offer *which reduces the terms of the original offer* is, of course, tantamount to a revocation of the offer and the substitution of a new offer." (emphasis added)).

Kinzer also alleges that misrepresentations of law and coercion by her attorney induced her to sign the settlement agreement, mandating that the settlement agreement be voided due to undue influence by a fiduciary. She cites three cases to support this claim, but none supports (even indirectly) the claim that allegedly flawed legal advice from a party's own attorney amounts to a breach of fiduciary duty, improper coercion, or that it renders a contract void. *See Wilson v. Hayes*, 40 Minn. 531, 540, 42 N.W. 467, 471 (1889) (noting that a contract may be void if its material terms are altered without the knowledge of a party); *Swanson v. Domning*, 251 Minn. 110, 112-13, 115, 86 N.W.2d 716, 719-20 (1957) (noting that a contract may be voidable when acceptance was induced by fraudulent statements by the other party); *Welch v. Buller*, 481 N.W.2d 856, 861 (Minn. App. 1992) (noting that a claim of fraud committed by the other party in the inducement of a contract may be arbitrated under an arbitration clause), *review denied* (Minn. May 15, 1992). No authority supports the notion that a party may void a settlement agreement by claiming that a party was misadvised about the consequences of refusing to sign by his or her own attorney. We therefore conclude that the district court properly held that Kinzer is not entitled to void the settlement agreement.

Kinzer's coercion allegation also fails. A claim of coercion can void a contract only when there is "physical force or unlawful threats which destroys the victim's free will and compels him [or her] to comply with some demand of the party exerting the

7

coercion." *Wise v. Midtown Motors, Inc.*, 231 Minn. 46, 51, 42 N.W.2d 404, 407 (1950). Kinzer acknowledged in the district court motion hearing that she was not subjected to any form of physical force, and the record does not indicate that any threats were made to compel her signature. Her claims of coercion are therefore baseless.

Kinzer next argues that, because the subject property is Torrens property, only the district court can adjudicate the title and it cannot be subject of a settlement agreement. *See* Minn. Stat. §§ 508.58, .59 (2014). But she identifies no authority that prohibits the district court from basing its adjudication of a Torrens title on a settlement agreement. Kinzer's Torrens argument is therefore inadequate to justify relief. *See Ganguli v. Univ. of Minn.*, 512 N.W.2d 918, 919 n.1 (Minn. App. 1994) (holding that an argument unsupported by legal analysis or citation is waived).

Kinzer also argues that the district court violated the confidentiality and voluntariness of mediation proceedings by refusing her motion to return the matter to mediation. Kinzer raised neither of these arguments in the district court, so we decline to address them further. *See Thiele*, 425 N.W.2d at 582.

## II.

Kinzer contends that the district court denied her constitutional due-process rights by dismissing her case and refusing to hear her motion for a trial. Because Kinzer did not raise the argument to the district court, it is waived. *See id.* We note, however, that Kinzer does not dispute the district court's conclusion that she failed to properly schedule a hearing before filing the motion. Kinzer's motion also failed to identify a basis for her trial request: no rule 59.14 or "motion for trial" appears within the Minnesota Rules of

8

Civil Procedure. Kinzer points to no authority requiring the district court to hear such a motion even if it had been properly filed.

As support for her constitutional claim, Kinzer refers generally to her right to a hearing before being deprived of property. The record reflects that Kinzer filed a civil action, participated in a day-long mediation session with a judge and representatives of the parties, signed a settlement agreement, and had an opportunity to be heard in a hearing addressing her claims that the settlement agreement was invalid. We therefore conclude that she was not denied her due-process rights.

**Affirmed.**